## Panke et al. v. Louisville Trust Co.
## Louisville Trust Co. v. Panke et al.

December 20, 1946.

Edward P. Humphrey for Louisville Trust Co. et al.

James T. Robertson for Panke et al.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming in part, reversing in part.

The suit is by the widow and heirs, a son and daughter, of the late George Panke, to recover of the Louisville Trust Company $2,801.65, retained in excess of the maximum statutory compensation to which a personal representative was entitled at the time and now (Section 3883, Kentucky Statutes, now KRS 395.150) and

$5,000 which the Trust Company, as executor, paid to attorneys, less whatever sum the court may deem reasonable. The judgment is for the plaintiffs for the principal sum of $2,801.65, with interest, and for the defendant on the claim for excessive attorneys' fees. The defendant prosecutes an appeal from so much of the judgment as is adverse to it, and the plaintiffs cross-appeal from that part which denied them interest from July 21, 1928, and its abatement from November 19, 1934, to June 5, 1941. The plaintiffs also prosecute a separate appeal from the judgment denying recovery of anything on their claim for excessive attorneys' fees.

It is fair to the present management of the Louisville Trust Company to say that the transactions occurred before receivership and reorganization of the institution, although it appears the present company must pay the judgment.

Panke's will, probated in January, 1926, placed his entire estate in the hands of the Trust Company, as trustee, until his youngest child should become 40 years old. He also nominated it as executor. A contest of the will by his two children, with the support of the widow, resulted in its being set aside in March, 1928. The judgment became final in June of that year. Although the Trust Company's authority as executor terminated when the will was annulled (Douglas' Adm'r v. Douglas' Ex'r, 243 Ky. 321, 48 S. W. 2d 11), four months thereafter, on July 21, 1928, it paid itself $4,000 and its attorneys $5,000 in fees without an order of court. Two months later it qualified as administrator upon the nomination by the widow, who it appears was not advised as to her right to qualify. Final settlements as executor and administrator were confirmed by the County Court in August and December, 1929, no exceptions having been filed. They revealed the payments questioned in this suit, which was filed in June, 1933. The answer of the Trust Company was, in effect, that the fees were fair and reasonable. It was therein asserted for the first time that the Trust Company was entitled to compensation for extraordinary services. An amended answer, following amendment of the petition, pleaded that the fees "were authorized and approved by the plaintiffs and they are estopped to dispute same." On November 19, 1934, the plaintiffs filed some depositions, but did

not complete their proof. No other step was taken in the case by either party for more than 6½ years. On May 4, 1941, the plaintiffs, who had discharged the attorney who filed the suit for them and retained the present counsel, served notice of a motion that the court hear oral evidence. On June 5th the court dismissed the action, without prejudice, for want of prosecution. On June 18th the plaintiffs moved to set aside the order dismissing the case. The motion was held up by the court until March 4, 1942, when it was sustained.

We pause here to respond to the argument of the Trust Company that the court had lost jurisdiction and was without authority to reinstate the case because more than sixty days had elapsed since the order of dismissal. The filing of the motion in time suspended the judgment and kept jurisdiction. The court's delay in acting on the motion cannot be permitted to prejudice the parties. Reinstatement of the case was within the court's power and jurisdiction. Petty v. Wilbur Stock Food Co., 128 Ky. 130, 107 S. W. 699, 32 Ky. Law Rep. 956; Algee v. Algee, 168 Ky. 362, 192 S. W. 197.

From this time on the case moved with reasonable dispatch. The defendants pleaded that the plaintiffs had agreed to the payment of the questioned fees, and also that through laches they had lost their right to claim recovery. The chancellor sustained the plea of laches in defense of the suit to recover the attorneys' fees, but held it not applicable to the claim of excessive compensation that the Trust Company had paid itself because the allowance of such compensation is statutory; and, furthermore, because there had been no prejudice through loss of evidence necessary to a defense. However, the abatement of the interest was on the ground of laches.

Since the Trust Company's authority as executor terminated on the setting aside of the will, as we have pointed out, it thereafter was an executor de son tort and during that period its actions subjected it to strict liability without any of the rights of a fiduciary. Rudd v. Rudd, 184 Ky. 400, 214 S. W. 791; 21 Am. Jur., Executors and Administrators, Secs. 839, 845. However, its subsequent qualification related back to the death of the intestate and made valid acts which otherwise would or

might have been tortious. Gibson's Adm'r v. Gibson, 241 Ky. 74, 43 S. W. 2d 343. It was certainly the duty of the administrator to have sought approval of the court of any claim of more than the statutory fee as compensation for extraordinary services. That was not done.

The estate as appraised for the Federal Estate Tax was in round figures $160,000, of which $24,000 was personal property, and $136,000 real estate. The acting executor looked after the real property, for which it received commissions of 5% of the rents. No claim is made against it on that account. It did nothing else in relation to the real property. The fee, which it paid itself, $4,000, is the equivalent of 16.68% of the value of the personal property, whereas the maximum fee allowed by the statute for ordinary services is 5% of the receipts and disbursements. KRS 395.150. It distributed among the widow and heirs $14,568 in securities. It was not entitled to a full commission on that sum. Baker's Heirs v. Dixon Bank & Trust Co., 292 Ky. 701, 168 S. W. 2d 24. However, there is no complaint of the judgment allowing 5% on the total personal estate, namely, $2,801.65.

The sole defense of the Trust Company on this item of administrator's fees is that the parties agreed to it. The evidence to that effect consists solely of the testimony of the then vice president and trust officer, who had severed his connection with the Trust Company in 1930 and moved to a distant state. Quite naturally, his memory was not clear, as is manifested by some equivocations and admissions, as well as by contradiction of some of the statements by the records. The testimony of Mrs. Panke is supported, in part, by her daughter, and the circumstances are stronger to the effect that she never agreed to such fees but objected to the amounts. It is quite clear that the Trust Company's officer did not make a full and complete disclosure as to the statutory fees, but impressed upon Mrs. Panke the idea that it was entitled to that sum as a matter of law. A review of the evidence would be of little value. It seems sufficient to say that after a full consideration we conclude that it supports the finding of the chancellor.

We think the court was in error in allowing interest from October 5, 1930, which was two years from the

date of the Trust Company's qualification as executor. Doubtless that is rested on the provision of Sec. 3859, Kentucky Statutes, now KRS 395.310, that a personal representative shall be charged with interest on the surplus assets in its hands from that time. The defendant paid itself when it was an executor de son tort, on July 21, 1928. We do not think that the provision of the statute is applicable where a personal representative has, without legal right, paid a sum of money to itself before that time. From the time it did so, the Company had the use of the money for its own profit and benefit and is chargeable accordingly.

The abatement of interest from November 19, 1934, to June 5, 1941, a period of six years, seven months and sixteen days was rested on laches. The period is that in which the plaintiffs took no step in the prosecution of the suit. During that time the Trust Company had gone through receivership and reorganization, but that does not seem to have caused any prejudice to its rights in relation to this item. It is shown that in the reorganization $1,300,000 in assets of the old company were set aside for the payment of claims, and the plaintiffs made no claim against that fund. It was exhausted, but it appears that the new company assumed liability for any additional amount necessary to satisfy such claims as these. It may be observed that the defendant had the right at any time to call up the case for trial or to move for its dismissal for want of prosecution, but it did nothing. In any event, the equitable rule of laches does not apply, for this claim is based on a statute and interest on it would follow as a question of law. We think the judgment was erroneous in these two particulars.

It is an interesting question whether the trial court was correct in denying recovery of any part of the $5,000 paid the attorneys on the ground of laches after the filing of the suit. There was much more evidence on this branch of the case tending to show that the delay prejudiced the rights of the defendant than in the matter of interest, for both of the attorneys had died and their respective estates had been settled. And there was loss of other evidence also. It is not necessary to consider the question, for we have reached the conclusion that the fee was not excessive. The executor was responsible for and was administering an estate of $160,-

000. Mr. H. M. Peckinpaugh, who had been Panke's attorney, was retained as counsel and was frequently consulted about many questions arising in the administration. It appears that the family posed these questions and made frequent calls upon the executor for information. There were three suits by or against the executor in which Mr. Peckinpaugh represented it. One of them went to trial and the others were settled. When the will was contested it was the duty of the executor to employ counsel and defend it. McMillen's Ex'rs v. McElroy, 186 Ky. 644, 217 S. W. 927. Judge Arthur M. Rutledge was associated with Mr. Peckinpaugh in the defense. The trial of the case took three days. These attorneys were reputable and able members of the Bar, and, while the case was lost by a verdict of 10 to 2 against the will, the lawyers did the best they could with what they had. There is evidence that their defense was weak, but this was not the fault of the attorneys, for it is said that they practiced their case with industry and ability. Two lawyers expressed the opinion as to the value of the services on this trial and that $5,000 was unreasonable, but they did not take into consideration, because they were not advised, what services were rendered in the preparation of the case or other than in this contest suit. The persuasive opinion of other lawyers is that the fee of $5,000 to the two lawyers was fair and reasonable. It is to be remembered that in 1928 the country was in a period of inflation and fees and prices were very high. We conclude that the evidence on this point sustains the reasonableness of the fees paid.

Wherefore, on the appeal by the Pankes, the judgment as to the attorneys' fees is affirmed. On the appeal by the Trust Company, it is affirmed to the extent of the principal sum and is reversed on the cross-appeal to the extent that it denies interest for the full period from July 21, 1928.